UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROMAN DE GABRIEL RIVERA,

                Plaintiff,

                -v.-

LETTIRE CONSTRUCTION CORP.; MOTT CENTER LLC; REDFERN FRP LLC, PHIPPS HOUSES; ROCKAWAY VILLAGE III HOUSING DEVELOPMENT FUND CORPORATION; FRV PHASE 3 LIHTC LLC; and MOOREGROUP CORPORATION,

                Defendants.

21 Civ. 6006 (KPF) (KHP)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

       This case concerns personal injuries allegedly suffered by Plaintiff Roman De Gabriel Rivera while working at a construction site.  The instant dispute arises from an order entered by Magistrate Judge Katharine H. Parker (the "Order") directing Plaintiff to turn over audio recordings made of conversations with non-party witness Guillermo Sanchez Melgarejo prior to Melgarejo's deposition.  Plaintiff objects to the Order, and requests this Court's review.  For the reasons discussed in this Opinion, the Court overrules Plaintiff's objections to Judge Parker's Order.

## BACKGROUND[1]

### A.   Factual Background

      The Court discusses only those portions of the factual and procedural histories of this case that are relevant to the instant motion.  Melgarejo is an

---

[1]     The facts set forth herein are drawn from Plaintiff's memorandum of law in support of his objections to Judge Parker's Order (Dkt. #116 ("Pl. Br.")), Melgarejo's memorandum

eyewitness to Plaintiff's accident, and was "in the immediate area at the time" of the accident. (Pl. Br. 2). Both Plaintiff and Melgarejo were employed by Boro Concrete, a subcontractor on the construction project at which Plaintiff allegedly suffered his injuries. (*Id.*). Plaintiff's counsel became aware of the fact that Melgarejo was an eyewitness through Defendants' initial Rule 26 disclosures. (*Id.*). Plaintiff's counsel then conducted, and recorded, two conversations with Melgarejo regarding what he had witnessed; one of the recordings was made within two weeks of the alleged accident. (*Id.* at 4). Plaintiff's counsel claims that Melgarejo was not aware that he was being recorded. (Dkt. #110 at 1 ("[I]f [Melgarejo] had granted [Plaintiff's counsel] permission [it] would have been memorialized in the audio tape.")). However, on August 4, 2022, counsel for Melgarejo emailed Plaintiff's counsel specifically to request production of any recorded statements then in Plaintiff's counsel's possession. (Melgarejo Br. 2-3; *see also id.*, Ex. 1; Pl. Br. 3-4).

**B.   Procedural Background**

Of note, Plaintiff does not dispute his obligation to produce the audio recordings of Melgarejo at some point. (*See* Dkt. #102 at 2 ("we respectfully request that the Court issue a temporary limited protective Order permitting Plaintiff to delay the production of [the] audio recordings")). The dispute concerns only the timing of that production.

---

of law in opposition and attached exhibit (Dkt. #125 ("Melgarejo Br."), and Defendants' letter in opposition to Plaintiff's objections (Dkt. #126 ("Def. Br.")).  The Court sources additional facts from relevant docket entries, where appropriate.

On August 9, 2022, Plaintiff filed a letter motion for a protective order, seeking to delay production of the recordings until after Melgarejo's deposition. (Dkt. #102; *see also* Melgarejo Br. 3; Pl. Br. 4). Melgarejo filed an opposition to Plaintiff's motion (Dkt. #106), and Plaintiff then filed a reply with leave of Judge Parker (Dkt. #110). On August 12, 2022, Judge Parker entered an order denying Plaintiff's motion, and directing Plaintiff to produce the recordings to Melgarejo's counsel that same day. (Dkt. #111). Later that day, Plaintiff filed a request for Judge Parker to stay the order, because Plaintiff intended to file objections to it. (Dkt. #112). And sometime later that same day, Judge Parker issued a full opinion and order explaining her reasons for denying Plaintiff's motions for a protective order and for a stay. (Dkt. #113 (the "Order")).

In the Order, Judge Parker found that production of the recordings should occur prior to Melgarejo's deposition, and that Plaintiff had not met his burden of showing good cause for delay. (Dkt. #113). Following Judge Parker's decision, Plaintiff filed his notice of objections to the Order (Dkt. #115), and a supporting memorandum of law (Dkt. #116). In subsequent correspondence, the parties debated whether a stay of Melgarejo's deposition until this Court ruled on Plaintiff's objections was proper, whether Plaintiff's application was appropriate, and the merits of Plaintiff's objections. (Dkt. #117-123). On August 26, 2022, this Court entered an order staying Melgarejo's deposition until after it had ruled on Plaintiff's objections, and directed Melgarejo and Defendants to file opposition briefs by September 30, 2022. (Dkt. #124). On September 30, 2022, both Melgarejo and Defendants submitted their

3

oppositions to Plaintiff's objections. (Dkt. #125-126). Accordingly, Plaintiff's objections to Judge Parker's Order are ripe for this Court's consideration.

## DISCUSSION

### A.   Applicable Law

"Pursuant to Federal Rule of Civil Procedure 72(a), a district judge must consider timely objections" to a non-dispositive ruling by a magistrate judge. *LBBW Luxemburg S.A.* v. *Wells Fargo Sec. LLC*, No. 12 Civ. 7311 (JPO), 2016 WL 11483934, at *1 (S.D.N.Y. Aug. 23, 2016) (internal quotation marks omitted). Under this Rule, the Court must modify or set aside only those parts of a magistrate judge's order related to non-dispositive matters that are clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Thomas* v. *Arn*, 474 U.S. 140, 149 (1985) ("Congress provided for a 'clearly erroneous or contrary to law' standard of review of a magistrate[] [judge's] disposition of certain pretrial matters[.]").

"A district court is justified in finding a magistrate judge's ruling clearly erroneous where, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Highland Mgmt., L.P.* v. *Schneider*, 551 F. Supp. 2d 173, 177 (S.D.N.Y. 2008) (internal quotation marks and citations omitted); *see also Indergit* v. *Rite Aid Corp.*, No. 08 Civ. 9361 (JPO), 2016 WL 236248, at *1 (S.D.N.Y. Jan. 20, 2016) (identifying the same legal standard); *Golden Horn Shipping Co.* v. *Volans Shipping Co.*, No. 14 Civ. 2168 (JPO), 2015 WL 6684518, at *1 (S.D.N.Y. June 30, 2015) (same).

"An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *MacNamara* v. *City of New York*, 249 F.R.D. 70, 77 (S.D.N.Y. 2008) (internal citations and quotation marks omitted); *see also LBBW Luxemburg S.A.*, 2016 WL 11483934, at *1 (noting the same). In legal matters where a magistrate judge is afforded broad discretion, courts only find that an order is contrary to law where the magistrate judge exceeds this discretion. *See, e.g.*, *Martinez* v. *N.Y. Police Dep't*, No. 19 Civ. 9885 (AJN), 2021 WL 4206944, at *2 (S.D.N.Y. Aug. 9, 2021) ("[The Magistrate Judge] did not exceed her wide discretion in managing discovery in this case by allowing the noticed Rule 30(b)(6) deposition to proceed.").

"It is well-settled that a magistrate judge's resolution of a non[-]dispositive matter should be afforded substantial deference and may be overturned only if found to have been an abuse of discretion." *McAllan* v. *Von Essen*, 517 F. Supp. 2d 672, 678 (S.D.N.Y. 2007) (internal quotation marks and citation omitted). As such, district courts assess a magistrate judge's pretrial orders under a highly deferential standard, pursuant to which an objecting party carries a heavy burden to prove error. *U2 Home Entm't, Inc.* v. *Hong Wei Int'l Trading Inc.*, No. 04 Civ. 6189 (JFK), 2007 WL 2327068, at *2 (S.D.N.Y. Aug. 13, 2007) (describing Rule 72(a)'s contrary to law or clearly erroneous standard as "stringent"); *see also Lugosch* v. *Congel*, 443 F. Supp. 2d 254, 276 (N.D.N.Y. 2006) (noting that particular deference is due where "the magistrate judge has been deeply involved in discovery matters in the case for years").

### B. Judge Parker Did Not Clearly Err in Denying Plaintiff's Motion for a Protective Order

Plaintiff raises three principal arguments in his objections to Judge Parker's Order. *First*, Plaintiff argues that Melgarejo's recorded statements are to be used solely for impeachment purposes, and thus should not be disclosed prior to Melgarejo's deposition in order to preserve their impeachment value. (Pl. Br. 6-12). *Second*, Plaintiff contends that cases within the Second Circuit establish that seeking to prevent deponents from tailoring their testimony constitutes good cause for a protective order. (*Id.* at 12-14). *Third* and finally, Plaintiff avers that there is good reason to suspect that Melgarejo will tailor his testimony if he is able to review his recorded statements prior to his deposition. (*Id.* at 14-16). These three arguments are interrelated, as Plaintiff suggests that the recordings will be needed for impeachment given the high likelihood that Melgarejo will tailor his deposition testimony to the recordings.

Under Federal Rule of Civil Procedure 26(b)(3)(C), a non-party may "obtain the person's own previous statement about the action or its subject matter." Fed. R. Civ. P. 26(b)(3)(C). The Rule defines a "previous statement" to include "a contemporaneous stenographic, mechanical, electrical, or other recording — or a transcription of it — that recites substantially verbatim the person's oral statement." Fed. R. Civ. P. 26(b)(3)(C)(ii). In order to deviate from the normal course of discovery and prevent or delay a witness or party from obtaining a previous statement, "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending .... The court may, for good cause, issue an order to protect a party or

6

person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1); *see also Gordon* v. *Target Corp.*, 318 F.R.D. 242, 246 (E.D.N.Y. 2016) ("[T]he touchstone for determining whether to issue a protective order under Rule 26(c) lies, in the first instance, on a party's ability to establish good cause.").

To obtain such a protective order, the moving party bears the burden of showing "good cause" through "particular and specific facts," as opposed to "conclusory assertions." *Rofail* v. *United States*, 227 F.R.D. 53, 54-55 (E.D.N.Y. 2005) (internal quotation marks and citation omitted); *see also, e.g., Brill* v. *Queens Lumber Co.*, No. 10 Civ. 1975 (DLI), 2011 WL 13295117, at *2 (E.D.N.Y. Mar. 28, 2011) (denying protective order to delay production of recordings of both defendant and non-party witness because plaintiff failed to articulate "specific reasons to believe that the witnesses in question will tailor their testimony to conform to plaintiff's recordings, [and thus] plaintiff has failed to show good cause for the issuance of a protective order"). "Ultimately, '[t]he grant and nature of protection is singularly within the discretion of the district court and may be reversed only on a clear showing of abuse of discretion.'" *Sealey* v. *C.R. England, Inc.*, No. 21 Civ. 3189 (FB) (TAM), 2021 WL 5409893, at *2 (E.D.N.Y. Oct. 8, 2021) (quoting *Dove* v. *Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992) (internal quotation marks omitted)).

As Judge Parker recognized, courts within this Circuit have "gone both ways" in determining whether to delay production of recordings and videos pursuant to Rule 26(c) until after a deposition. (Order 3). *Compare Poppo* v.

7

*AON Risk Servs., Inc.*, No. 00 Civ. 4165 (HB), 2000 WL 1800746, at *1 (S.D.N.Y. Dec. 6, 2000) (granting plaintiff's request for protective order to delay production of audiotapes in order to "prevent the defendant's witnesses from altering their testimony in order to conform with their recorded statements"), *with Costa* v. *AFGO Mech. Servs., Inc.*, 237 F.R.D. 21, 24-25 (E.D.N.Y. 2006) (denying protective order because "there is no reason to assume automatically that the party whose statements have been recorded will have a propensity to fabricate evidence or lie during the course of his or her testimony," and noting as "an additional reason" that statements had substantive value beyond being used for impeachment), *and Avila* v. *Target Corp.*, No. 21 Civ. 907 (PKC) (JMW), 2021 WL 4311142, at *5 (E.D.N.Y. Sept. 22, 2021) ("[Defendant] concedes that its entire purpose of withholding the video until after [p]laintiff's deposition is for impeachment purposes, essentially amounting to the exact 'gotcha' game that would inhibit the discovery process from proceeding in the just manner that the Rules [of Civil Procedure] were designed to accomplish. Accordingly, the Court finds that [defendant] has not shown good cause for withholding the video prior to [p]laintiff's deposition.").

That courts have come out differently on this issue is unsurprising, given the touchstone inquiry under Rule 26(c) is whether good cause exists, which is necessarily fact-intensive. Plaintiff here, as the party moving for a protective order, "ha[d] the burden of showing that good cause exist[ed] for issuance of that order.'" *Brown* v. *Astoria Fed. Sav. & Loan Ass'n*, 444 F. App'x 504, 505 (2d Cir. 2011) (summary order) (quoting *Gambale* v. *Deutsche Bank AG*, 377

8

F.3d 133, 142 (2d Cir. 2004)). Good cause in this setting requires more than mere speculation that the deponent may tailor his or her testimony based on review of the subject recording. *See, e.g., Gordon*, 318 F.R.D. at 246 ("Conclusory assertions and the 'whiff' of possible improprieties on the part of Plaintiff are insufficient to establish good cause."); *Rofail*, 227 F.R.D. at 54-55 (noting that the moving party must offer "particular and specific facts" in support of its motion).

Judge Parker properly applied this good cause standard in her Order. Taking into account Plaintiff's arguments for why a protective order should issue, she found that "Plaintiff has not met his burden of demonstrating good cause[,]" but instead had merely speculated that Melgarejo would improperly tailor his testimony despite his non-party status. (Order 4 (collecting cases)). Judge Parker, who has overseen discovery in this case and is intimately familiar with the factual allegations, the various firms participating, and the parties' interests, found that Plaintiff's speculation that Melgarejo would lie or otherwise tailor his testimony was belied by the fact that Melgarejo was a "non-party who has no stake in the matter but merely witnessed the incident." (Order 5).[2] After reviewing the parties' arguments with respect to Plaintiff's

---

[2] Curiously, Plaintiff's counsel repeatedly refers to Melgarejo as "not a party" (*see, e.g.*, Pl. Br. 7), while also contending that Melgarejo has an incentive to tailor his testimony because he was represented by defense counsel at one point, and now is represented by "a high-powered law firm *paid for* by defense counsel" (*id.* at 15; *but see* Def. Br. 3 ("Defense counsel have not retained Mr. Melgarejo's attorneys no[r] are we paying the associated fees.")). In any event, the Court does not find Plaintiff's arguments regarding conflicts in Melgarejo's representation in this case to be persuasive. When Judge Parker ordered Plaintiff's counsel not to initiate direct contact with Melgarejo, she noted that this directive was "pending a decision from this Court regarding [defense counsel's] representation of the witnesses." (Dkt. #84). Subsequently, Judge Parker held a

objections as well as the history of this case, the Court sees no reason to dispute Judge Parker's consideration of the evidence.

In his objections, Plaintiff attempts to harmonize the law in this admittedly messy, fact-intensive area by arguing that preserving evidence for later impeachment always constitutes good cause for delaying production of a witness's prior statements. (Pl. Br. 6-7). Although there is some support in the caselaw for such a position, courts have not been perfectly consistent in finding good cause to withhold statements and recordings that purport to be used solely for impeachment purposes, as distinguished from those that also contain substantive information. *Compare Katrinic* v. *Moonstar Logistics, LLC*, No. 19 Civ. 8733 (LGS), 2020 U.S. Dist. LEXIS 32036, at *3 (S.D.N.Y. Feb. 25, 2020) (granting protective order where the "relief preserves for [d]efendants the value of the videotape for impeachment purposes"), *with Avila*, 2021 WL 4311142, at *5 (holding that preserving evidence solely for impeachment purposes did not constitute good cause for a protective order, and was contrary to the design and purpose of the Federal Rules of Civil Procedure). For example, in *Avila*, the court found that defendant's appeal to the potential impeachment value of

---

conference, and determined that "there was no reason to disqualify Defense counsel" from representing Melgarejo. (Dkt. #91 (discussing previously-held conference)). Thereafter, Smith Mazure P.C. took on representation of various non-party witnesses, including Melgarejo. (Pl. Br. 3). Plaintiff has not pointed the Court to specific facts suggesting that Melgarejo's representation in this case would inevitably lead to him tailoring his testimony or lying, such that good cause exists for a protective order here. Instead, Plaintiff appears to be re-litigating issues that Judge Parker already decided in order to make a showing of good cause. Regardless, and as discussed throughout this Opinion, courts within the Second Circuit have found that good cause is lacking where a party claims, without sufficient evidentiary backing, that an opposing party will tailor testimony without issuance of a protective order. *See, e.g., Avila* v. *Target Corp.*, No. 21 Civ. 907 (PKC) (JMW), 2021 WL 4311142, at *5 (E.D.N.Y. Sept. 22, 2021).

surveillance footage in seeking a protective order did not constitute "good cause for withholding the video prior to [p]laintiff's deposition." *Avila*, 2021 WL 4311142, at *5. However, the court there did not consider, much less adopt, the dichotomy that Plaintiff proposes here (*see* Pl. Br. 7), between statements that also contain substantive information and those that do not. *See also, e.g.*, *Gordon*, 318 F.R.D. at 246 (rejecting defendant's argument that potential impeachment value of evidence constituted sufficient good cause for a protective order, and noting that "[d]efendant has provided this Court with no independent factual basis to determine whether a stay is warranted other than the spectre that Plaintiff may tailor her testimony" (internal quotation marks omitted)).

Another distinction that has been identified by some courts concerns the type of statement at issue. In *Sealey* v. *C.R. England, Inc.*, for example, the court withheld post-accident surveillance footage of the plaintiff until after his deposition because the defendants "persuasively argue[d] that the video evidence could directly contradict [p]laintiff's claims of injury, and serve as valuable evidence for impeachment." 2021 WL 5409893, at *4.³ In so finding, the *Sealey* court distinguished cases concerning a party's prior statements subject to discovery under Rule 26(b)(3), like *Rofail*, and those concerning "video recordings of the accidents at issue in the cases[,]" including *Gordon* and

---

³    In this respect, too, the facts in *Sealey* are different than those here. The *Sealey* defendants articulated specific facts in support of their motion for a protective order — namely, that the surveillance footage directly contradicted the plaintiff's claims of injury — facts that Judge Parker found lacking here.

11

*Avila. Id.* The latter group of cases, the *Sealey* court reasoned, were different because Rule 26(b)(3) expressly requires disclosure of a person's prior statement, and because the video recordings of the subject accidents "could constitute substantive evidence[.]" *Id.*

This case, however, is distinct from *Sealey*, insofar as Melgarejo's statements are subject to Rule 26(b)(3)(C), *see* 1 STEVEN S. GENSLER AND LUMEN N. MULLIGAN, FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY RULE 26 (2022 ed.) ("Parties are entitled to obtain, by request, any statements they previously made concerning the action or its subject matter…. Nonparties enjoy the same right."), and because the recordings contain his statements about the accident.[4] After all, Plaintiff notes that Melgarejo's recorded statements "contain information as to what [he] saw at the time of the subject occurrence." (Pl. Br. 4). Further, one of the recordings was made within two weeks of the alleged accident and likely contains information related to the factual allegations of the case. (*Id.; see also* Melgarejo Br. 14; Def. Br. 2). In this respect, the recordings here are far different from post-accident

---

[4]     *See also* 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2015 (3d ed. 2022):

> If a party plans to testify to one version of the facts, and the opponent has evidence supporting a different version of the facts, the opponent's evidence will tend to impeach the party by contradiction, but if discovery of this kind of evidence is not permitted the discovery rules might as well be repealed. Even those who have been most concerned about protecting impeachment material recognize that substantive evidence must be subject to discovery even though it also tends to contradict evidence of the discovering party.

*Id.* (internal footnotes omitted)).

12

surveillance footage. Although the recordings may contain inadmissible hearsay, they almost certainly contain "substantive information, useful for more than potentially impeaching the defendants at trial." *See Costa*, 237 F.R.D. at 25. Furthermore, Melgarejo has expressed an interest in "refresh[ing] his own recollection with review of the recordings" prior to his deposition, which deposition will likely elicit substantive evidence about the accident. (Melgarejo Br. 8).

The fact remains that, despite Plaintiff's efforts to identify a unifying principle, courts do not employ any mechanistic rules based on the impeachment value of evidence versus its substantive value, but instead focus on a showing of good cause. *See, e.g.*, *Gardner* v. *Norfolk S. Corp.*, 299 F.R.D. 434, 436-37 (D.N.J. 2014) ("Case law has reached various outcomes concerning the discoverability and the timing of the production of these types of materials. Some courts have considered whether the surveillance possessed solely impeachment, rather than substantive, value in determining whether a party may delay production until after a plaintiff's deposition …. Other courts, however, have found surveillance evidence discoverable despite a party's intention to rely upon the surveillance materials for impeachment purposes only." (collecting cases)).[5] Precisely for this reason, Plaintiff places outsized

---

[5] *Gordon* v. *Target Corporation*, 318 F.R.D. 242, 245 (E.D.N.Y. 2016), discusses the cases on which Plaintiff relies in support of his argument that a protective order must issue due to the impeachment value of the subject recordings. The *Gordon* court noted that cases like *Poppo* v. *AON Risk Services, Inc.*, No. 00 Civ. 4165 (HB), 2000 WL 1800746 (S.D.N.Y. Dec. 6, 2000), and *Brannan* v. *Great Lakes Dredge & Dock Co.*, No. 96 Civ. 4142 (DC), 1998 WL 229521 (S.D.N.Y. May 7, 1998), observed that some courts within the Second Circuit had delayed production of recordings and tapes when the evidence was valuable for impeachment. However, the *Gordon* court clarified that these cases

importance on the snippet of Judge Parker's Order discussing impeachment and hearsay. (Order 5-6 (noting that the "impeachment value of [Melgarejo's] statements is severely curtailed" because they contain hearsay)). More pointedly, even if Plaintiff were correct that Judge Parker misperceived the impeachment value of the recordings because she found that they constituted inadmissible hearsay, that finding was only a portion of her reasoning for why Plaintiff had failed to show good cause. (Order 6). Judge Parker also questioned whether the statements had any impeachment value whatsoever, given Plaintiff had not shown that Melgarejo was likely to tailor his testimony. (*Id.* ("Plaintiff has provided no evidence … that impeachment evidence will be needed."); *see also id.* at 4 ("Presumably, Melgarejo spoke candidly during this conversation and provided Plaintiff's counsel with his recollections of the relevant events to the best of his ability. Plaintiff's counsel has made no allegations to the contrary.")). This finding, in addition to Judge Parker's determination that Plaintiff's request couples conclusory allegations related to Melgarejo's prior representation in this case with a musing that he has an incentive to lie (Pl. Br. 14-16), only adds further support to her conclusion that

---

did not discuss the "good cause" standard that governs whether a protective order is warranted. *See id.* at 246 ("Although the Court acknowledges the cases cited by [d]efendant which authorized a stay of discovery of surveillance video until after a party's deposition, the Court finds the reasoning set forth in those decisions unpersuasive. Specifically, the touchstone for determining whether to issue a protective order under Rule 26(c) lies, in the first instance, on a party's ability to establish good cause. That essential condition precedent is lacking here."); *see also Rofail* v. *United States*, 227 F.R.D. 53, 57 (E.D.N.Y. 2005) (discussing cases, and noting that "[c]ourts which routinely allow stays of production of party statements until after deposition are ignoring both the Rule 26(c) requirement that a litigant demonstrate good cause for the stay and the general rule that discovery by one party does not interrupt discovery of the other").

good cause does not exist here. Even if Plaintiff had marshaled evidence to show that Melgarejo thought his employment were in jeopardy — which he did not — Judge Parker retained the discretion to weigh the competing interests that Plaintiff points to regarding impeachment, and that Melgarejo has in reviewing his previous statement about the accident, in order to determine whether good cause exists. (*Compare* Pl. Br. 15, *with* Def. Br. 3 ("defense counsel never warned or even suggested" that witness' jobs were in danger)).

Separately, the Court rejects Plaintiff's suggestion that Judge Parker wrongly "distinguished cases that hold" that a party is entitled to unrefreshed deposition testimony. (Pl. Br. 12). Plaintiff's citations to brief, summary dispositions of similar issues, or to cases that simply reiterate the "good cause" standard for granting of a protective order, do not suggest that Judge Parker clearly erred. *See, e.g.*, *Boyce* v. *Allied Interstate*, No. 05 Civ. 1596 (DGT) (WDW), 2005 WL 2160204, at *1 (W.D.N.Y. Aug. 25, 2005) (granting plaintiff's request for a protective order in three-paragraph order, and noting that the court agrees with the reasoning in *Poppo*, 2000 WL 1800746); *Miller* v. *Levi & Korsinsky, LLP*, No. 20 Civ. 1390 (LAP), 2022 WL 566827, at *1 (S.D.N.Y. Jan. 26, 2022) (granting request for protective order because "[p]laintiff *has met her burden of establishing good cause* ... under Rule 26(c)" (emphasis added)). Judge Parker did not suggest that preventing a deponent from tailoring testimony could never rise to the level of "good cause" under Rule 26(c). Nor did she suggest that there is no value in unrefreshed testimony. Instead, she distinguished the present matter from cases like *McQueen* v. *Huddleston*,

15

No. 13 Civ. 302 (JTC), 2015 WL 3746733 (W.D.N.Y. June 15, 2015), and *Poppo*, 2000 WL 1800746, both of which granted a party's request for a protective order to delay production of an audio recording based on a showing that a witness would tailor testimony, and she found that good cause did not exist here because "Plaintiff[] ha[s] shown no reason to suggest [Melgarejo's] statements at the deposition will deviate from his statements in the recording." (Order 5; *see also* Melgarejo Br. 15 (discussing these cases)).

As the Court noted, its review of Judge Parker's Order is subject to a highly deferential standard. *See, e.g.*, *McAllan* v. *Von Essen*, 517 F. Supp. 2d 672, 678 (S.D.N.Y. 2007) (a district court should only reconsider a magistrate judge's order where "'upon review of the entire record, [it is] left with the definite and firm conviction that a mistake has been committed.'" (quoting *United States* v. *Snow*, 462 F.3d 55, 72 (2d Cir. 2006)). The Court does not find that Judge Parker's analysis of whether good cause exists here was clearly erroneous or contrary to law. Whether good cause exists is the dispositive inquiry under Rule 26(c), regardless of the substantive or impeachment value of the relevant statements. Judge Parker applied that standard, and found that Plaintiff's arguments in support of his motion for a protective order relied on unsubstantiated speculation that Melgarejo's would tailor his testimony. The Court agrees with her finding.

## CONCLUSION

For the above reasons, Plaintiff's objections to Judge Parker's Order are without merit and overruled. Plaintiff is ORDERED to produce the recordings on or before **November 4, 2022.** The parties are further ORDERED to meet and confer on or before **November 4, 2022** to schedule Melgarejo's deposition.

The Clerk of Court is directed to terminate the pending motion at docket entry 115.

SO ORDERED.

Dated: October 26, 2022
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge