SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x
TEO QUINTERO,

                Plaintiff,

   -against-

520 MADISON OWNERS LLC and 520 MADISON VENTURE,

                Defendants.
------------------------------------------------------------------x

Index No.: 159128/2016

**AFFIDAVIT OF ANGELA LEVITAN, Ph.D, CPE**

COMMONWEALTH OF PENNSYLVANIA    )
                                                ) ss:
COUNTY OF BUCKS                       )

      I, ANGELA LEVITAN, a biomechanical engineer and Certified Professional Ergonomist, being duly sworn, state under the penalty of perjury that:

      1.    I am an engineer affiliated with ARCCA Inc., which maintains offices at 2288 Second Street Pike, P.O. Box 78, Penns Park, PA 18943.

      2.    I hold a Doctor of Philosophy degree in Industrial and Systems Engineering, Human Factors Option, and a Master of Science degree in Industrial and Systems Engineering, with an emphasis in Safety Engineering, from Virginia Polytechnic Institute and State University (Virginia Tech). I also obtained a Master of Science degree in Mathematics from Virginia Tech, and a Bachelor of Arts in Mathematics from the University of Connecticut. My curriculum vitae is annexed hereto as **Exhibit "A"**.

      3.    I have completed advanced coursework in the fields of musculoskeletal biomechanics, human factors, kinesiology, physiology, ergonomics, occupational biomechanics, safety, and impact biomechanics.

1

4.  I am a Certified Professional Ergonomist (CPE) and a member of the American Society of Biomechanics, American Society of Safety Professionals (ASSP), Human Factors and Ergonomics Society, IEA Slips, Trips and Falls Committee, and ASTM International F13 Committee on Pedestrian/Walkway Safety. I was a National Academies member of the Committee on Review of the National Institute of Occupational Safety and Health (NIOSH) Construction Research Program, NIOSH 2019 Study Section Grant Reviewer and in 2011 was designated as one of "100 Women Making a Difference in the Safety, Health and Environmental Profession" by ASSE's Women in Safety Engineering. I was also a member of NIOSH's Fall Prevention Work Group. In the course of my work over the years, I have visited numerous types of worksites and assessed worksite injury risks from various perspectives including interactions with multiple types of workers and varying levels of contractors and sub-contractors.

5.  While at Virginia Tech, I taught courses to both undergraduate and graduate students related to Human Factors Engineering, Industrial Engineering, Safety and Occupational Biomechanics.

6.  Upon graduating from Virginia Tech, I worked for approximately 10 years at the Liberty Mutual Research Institute for Safety in Hopkinton, Massachusetts. During my tenure at Liberty Mutual, I completed multiple research projects that examined the mechanisms of balance control on level and elevated surfaces, including slips and falls and working on ladders. This included the influence of individual, task, and environmental factors. Completion of these projects required knowledge, use, and application of applicable standards to accurately translate real-world situations to laboratory scenarios and apply laboratory findings to real-world designs. Motivation for the research projects was partially derived from the construction industry, including site visits and consultations with field representatives.

7. I maintain an OSHA 30-Hour Outreach Training for the Construction Industry Certification, an OSHA Fall Protection for the Competent Person Certification, an OSHA Scaffolding Safety for the Competent Person Certification, an OSHA 10-Hour Outreach Training Program – General Industry Certification, an NYC DOB 4-Hour Support Scaffolding User Certification, an NYC DOB 32-Hour Supported Scaffold Installer/Remover Certification and an NYC DOB 8-hour Site Safety Coordinator Training Certification.

8. I am familiar with the principles and practice of construction site safety and I am familiar with OSHA, the New York Labor Law and New York State Industrial Code regulations, as said laws and regulations may pertain and relate to work-related accidents, including the interpretation and application of OSHA, the New York Labor Law, and the New York State Industrial Code Regulations.

9. I have reviewed various materials in connection with this litigation including, but not limited to, the pleadings, plaintiff's bills of particulars, plaintiff's deposition testimony and exhibits, deposition testimony by Robert Murray on behalf of Defendant 520 Madison Owners LLC and the construction contract for the subject construction project on behalf of 520 Madison Owners LLC and PAL Environmental Services ("PAL") marked as an exhibit, deposition testimony of non-party witnesses Bryan Pilgrim, plaintiff's PAL field supervisor and plaintiff's PAL co-worker Yeison Villa with deposition exhibits, the PAL Incident/Accident Investigation Report with witness statements, a color photograph of the subject scaffold, and post-accident medical records, the PAL logs by PAL field supervisor Bryan Pilgram dated July 7, 2016 and July 8, 2016 including a daily checklist for safety inspections of fall protection and all PAL employees, daily logs, and daily safety meeting/toolbox talks and plaintiff's motion papers in support of partial summary judgment with exhibits.

10. Based upon my review of the Plaintiff's testimony, as well as the aforementioned documents, I have determined the following:

   a. On July 8, 2016, Teo Quintero, the Plaintiff, was standing at the height of the platform on a metal step of the integrated ladder attached to the narrow end of a Baker-type scaffold (approximately 3 feet wide and seven feet long). Based on the Plaintiff's description, he was facing the scaffold platform from outside the guardrails and his hands were on the vertical sides of the integrated ladder, located at the corners of the scaffold. He intended to descend the scaffold when, without warning, the scaffold started to tip in the direction to the left of the Plaintiff. The entire scaffold tipped over sideways and both the Plaintiff and the scaffold fell to the ground. The Plaintiff landed face down on the concrete floor with his hands in front of him. The scaffold landed on top of the Plaintiff's lower back after he was already on the ground, with the longer side of the scaffold on top of the Plaintiff's back.

   b. All four wheels of the scaffold were locked. The scaffold had guardrails around the entire perimeter of the scaffold about four feet above the scaffold platform.

   c. According to the Plaintiff, and all evidence and testimony in the record, the scaffold remained fully intact post-fall. Plaintiff observed nothing wrong with the scaffold platform, wheels, locks, pins, or ladder prior his accident. The scaffold was also inspected post-accident by the Plaintiff's field supervisor Bryan Pilgrim, who testified that his post-fall inspection of the scaffold confirmed that there was nothing wrong with the scaffold. At the time of the accident, the scaffold was on level ground.

11220946v.1

FILED: NEW YORK COUNTY CLERK 10/22/2020 10:48 PM
NYSCEF DOC. NO. 169
INDEX NO. 159128/2016
RECEIVED NYSCEF: 10/22/2020
Case 1:21-cv-06006-AS-KHP   Document 226-7   Filed 12/21/23   Page 5 of 6

<ol type="a" start="4">
<li>A scaffold is an inanimate object that requires the application of force to move in a certain direction.</li>
<li>The only external forces applied to the otherwise static scaffold were the forces produced by the Plaintiff.</li>
<li>To create a force in the direction that the scaffold fell, given the location of the Plaintiff, the Plaintiff would have to produce a force (i.e. by either pushing or pulling the scaffold) from outside of the base of the scaffold and in the direction that the scaffold fell. If the Plaintiff was descending the scaffold by way of the integrated ladder as he described, the Plaintiff was not applying any forces which would cause the scaffold to tip in the manner he claims.</li>
<li>Given the Plaintiff's description that he was on the narrow end of the scaffold, based on the laws of physics, the scaffold and the Plaintiff's body would fall at the same rate of speed. Therefore, the Plaintiff's description that he fell facedown underneath the scaffold is inconsistent with the principles of biomechanics and the laws of physics.</li>
</ol>

11. Based upon a reasonable degree of scientific certainty, and the information received to date as indicated above, I conclude that the Plaintiff's description of the event, specifically the placement of his body on the integrated ladder and the subsequent movement of the scaffold, compared with the final resting position of his body, is inconsistent with the principles of biomechanics and the laws of physics. An alternate plausible scenario based on the principles of biomechanics and the laws of physics is the event as described in the PAL accident report. In that scenario, the Plaintiff exited the scaffold through the guardrails on the long side of the scaffold, which is consistent with the Plaintiff's description of the final resting position of his body and the scaffold placement on top of him post-accident.

5

11220946v.1

12. A Baker-type scaffold is a typical and suitable type of construction equipment for the Plaintiff to utilize while removing the fireproofing on the ceiling as instructed by his PAL supervisor, Mr. Pilgrim, on the accident date. Based on the Plaintiff's own testimony, as well as the testimony of his PAL supervisor, Mr. Pilgrim, who inspected the scaffold daily, including prior to the Plaintiff's use on the accident date, there was nothing wrong with any aspect of the scaffold. Post-accident, Mr. Pilgrim testified that he conducted an inspection of the scaffold and found no evidence that it failed. There is no evidence that the scaffold was defective or that it failed in any manner

13. The subject scaffold was equipped with a full guardrail system that provided the Plaintiff with the necessary fall protection. Fall protection is required on scaffolding, which was established by the full guardrail system on the scaffold involved in Plaintiff's accident.

_____
ANGELA LEVITAN, Ph.D., CPE

Signed and sworn to (or affirmed) before me on October 20, 2020 (date) by Angela Levitan, Ph.D., CPE (name(s) of individual(s) making statement).

_____
Notary Public



Commonwealth of Pennsylvania - Notary Seal
BRITTANY D KAPLAN - Notary Public
Bucks County
My Commission Expires Feb 5, 2024
Commission Number 1295855

6

11220946v.1