UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
ROMAN DE GABRIEL RIVERA,

                                                              21-cv-06006-AS-KHP

                          Plaintiff,

      -against-

LETTIRE CONSTRUCTION CORP., MOTT
CENTER LLC, REDFERN FRP LLC, PHIPPS
HOUSES, ROCKAWAY VILLAGE III HOUSING
DEVELOPMENT FUND CORPORATION, FRV
PHASE 3 LIHTC LLC and MOOREGROUP
CORPORATION,

                          Defendants.
-------------------------------------------------------------------

PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION IN LIMINE TO:

1) PRECLUDE DEFENDANTS' EXPERT PRESTON QUICK, P.E. FROM REFERENCING AT TRIAL THE NEW YORK CITY DEPARTMENT OF BUILDINGS CODE OR OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION (OSHA) STANDARDS, WHICH ARE IRRELEVANT TO LIABILITY UNDER NEW YORK LABOR LAW, AND PRECLUDE HIM FROM TESTIFYING AS TO ANY LEGAL CONCLUSIONS;

2) PRECLUDE DEFENDANTS AND THEIR LAY WITNESSES FROM MAKING ANY ARGUMENTS OR STATEMENTS AT TRIAL REGARDING OSHA STANDARDS OR NEW YORK CITY DEPARTMENT OF BUILDINGS CODE, WHICH ARE IRRELEVANT TO LIABILITY UNDER NEW YORK LABOR LAW;

3) PRECLUDE NYC BUILDING DEPARTMENT INSPECTOR DANIEL GREER FROM TESTIFYING AT TRIAL, AND PRECLUDE HIS REPORT FROM BEING INTODUCED AS AN EXHIBIT AT TRIAL; and

4) PRECLUDE DEFENDANTS' BIOMECHANICAL ENGINEER, ANGELA LEVITAN, FROM TESTIFYING AT TRIAL.

                          **RONAI & RONAI, LLP**
                          Attorneys for Plaintiff
                          *The Ronai Building*
                          34 Adee Street
                          Port Chester, New York 10573
                          (914) 824-4777

## TABLE OF CONTENTS

PRELIMINARY STATEMENT…………………………………………………………..1

ARGUMENT

POINT I -   DEFENDANTS' EXPERT ENGINEER PRESTON QUICK, P.E.,
SHOULD BE PRECLUDED FROM REFERENCING AT TRIAL
THE NEW YORK CITY DEPARTMENT OF BUILDINGS CODE
OR OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION
(OSHA) STANDARDS AND ALSO, BE PRECLUDED FROM
TESTIFYING AS TO ANY LEGAL CONCLUSIONS; DEFENDANTS
AND THEIR LAY WITNESSES SHOULD SIMILARLY BE
PRECLUDED FROM MAKING ANY ARGUMENTS AND/OR
STATEMENTS AT TRIAL REGARDING OSHA OR NYC DOB
STANDARDS ……..………………………………………………………….... 3

A. Defense Expert Engineer Preston Quick, P.E ……………....................... 5

B. Defendants, and Their Lay Witnesses, Should be Precluded
at Trial From Making Any Reference to OSHA Standards
and/or NYC DOB Regulations ……………..................................................... 7

POINT II -   DEPARTMENT OF BUILDINGS INSPECTOR
DANIEL GREER SHOULD BE PRECLUDED FROM
TESTIFYING AT TRIAL SINCE HE IS NEITHER AN
EXPERT WITNESS, NOR CAN HE PROVIDE
RELEVANT TESTIMONY AS A FACT WITNESS;
AND FOR THE SAME REASONS, HIS REPORT
SHOULD ALSO BE PRECLUDED …………………………………………. 8

POINT III -   AS THE REPORT/TESTIMONY OF DEFENDANTS'
BIO-MECHANICAL ENGINEER, ANGELA LEVITAN
IS NOT WITHIN THE PURVIEW OF A BIOMECHANIST,
IS ALSO HIGHLY CONCLUSORY AND SPECULATIVE,
AND WILL NOT ASSIST THE JURY, SHE SHOULD BE
PRECLUDED FROM TESTIFYING AT TRIAL PURSUANT
TO FRE 702 ………………………………………………………....………. 11

A. Angela Levitan's Report Does Not Provide a Bio-Mechanical
Analysis of the Fall ………………………….......................................... 12

B. Angela Levitan's Report Is Unreliable and Contains
Only Speculations……………………..…………………………………. 15

C. Angela Levitan's Report Gives no Alternate Theory of How
the Fall Occurred Consistent with the Evidence in the Record ………... 20

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Alberto v. Disano Demolition Co*., 194 A.D.3d 607 (1st Dept. 2021) …………………………... 5

*Alonzo v. Safe Harbors*, 104 A.D.3d 446, 449 (1st Dept. 2013) ……………………….....…….. 4

*Alves Dos Santos v. Empire Mgt. & Constr. LLC*, 2022 NY Slip Op 33199
 (Sup. Ct. Kings Cty. Sept. 22, 2022) …………………………………………….……..... 19

*Boucher v. U.S. Suzuki Motor Corp*., 73 F.3d 18, 21 (2d Cir. 1996)…………………………... 15

*Cambell v Metropolitan Property and Cas. Ins*., 239 F.3d 179, 184-185 (2d Cir. 2001) …..…... 16

*Cruz v Cablevision*, 120 A.D.3d 744, 746 (2nd Dept. 2014) …………………………………….. 4

*Daniels-Feasel v. Forest Pharmaceuticals, Inc*., No. 17 CV 4188-LTS-JLC
 (S.D.N.Y. Sept. 3, 2021) …………………………………………………………………… 20

*DaSilva v. Toll First Ave LLC*, 199 A.D.3d 511, 512 (1st Dept. 2021) …………………………. 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579,
 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ………....…………………………….....… 11, 12, 15, 16

*Durant v. United States*, No. 1:17-CV-0902 (GTS/CFH) (N.D.N.Y. March 17, 2020) ………... 20

*Felker v. Corning Inc*., 90 N.Y.2d 219, 224 (1997) ……………………………………………... 4

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512,
 139 L.Ed.2d 508 (1997), 522 U.S. at 146, 118 S.Ct. 512 …...………………………....… 16

*Heller v. Shaw Indus., Inc*., 167 F.3d 146, 155 (3d Cir.1999)………………………………….. 16

*Hoyos v. NY-1095 Ave of the Americas*, 156 A.D.3d 491, 495-496 (1st Dept. 2017) …………… 4

*Huddleston v. United States*, 485 U.S. 681 (1988) …………………………………………….... 7

*Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992)…………………………………………….…. 7

*In re Air Disaster at Lockerbie Scotland,* 37 F.3d 804, 824 (2d Cir.1994), cert. denied ……… 15

*Jones v. 414 Equities LLC,* 57 A.D.3d 65, 69 (1st Dept. 2008) …………………………..…… 4

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150-51, 119 S.Ct. 1167,
 143 L.Ed.2d 238 (1999) ………………………………………………………….. 11

*Lebron v. Sec. of Fl. Dept of Children & Families*, 772 F.3d 1352, 1372 (11th Cir. 2014) ....... 10

*Long v. Forest-Fehlhaber*, 55 N.Y.2d 154, 160 (1982) ................................................... 3

*Malletier v. Bourke, Inc.* 526 F.Supp.2d 558, 562 (S.D.N.Y. 2007) ................................... 11

*McGrath v. Lake Tree Vil Assoc.*, 216 A.D.2d 877 (4th Dept. 1995) ................................ 5

*Morgan v. Girgis*, No. 07 Civ. 1960 (WCC) (S.D.N.Y. May 16, 2008) ........................... 13

*NA Ex Rel. MA v. New York City Department of Education*, No. 21 Civ. 2643
 (PGG) (SLC) (S.D.N.Y. Dec. 12, 2022) ........................................................................ 7

*Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005)..................................... 11

*O'Brien v Port Auth.*, 29 N.Y.3d 27, 34 (2017) .......................................................... 3

*Quintero v. 520 Madison Owners LLC*, 2021 NY Slip Op 31465
 (Sup. Ct. N.Y. Cty. Apr. 28, 2021) ........................................................................... 14

*Rodriguez v. Athenium House Corp.*, No. 11 Civ. 5534 (LTS) (KNF)
 (S.D.N.Y. March 5, 2013) ....................................................................................... 13

*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 503 (1993) ................................ 3

*Runner v. New York Stock Exch., Inc.*, 13 N.Y.3d 599, 603 (2009) ................................ 4

*Turpin v. Merrell Dow Pharmaceuticals, Inc.*, 959 F.2d 1349, 1360,
 cert denied, 506 U.S. 826 (1992) ............................................................................ 16

*U.S. v Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) ......................................................... 10

*Vernieri v. Empire Realty Co.*, 219 A.D.2d 593 (2nd Dept. 1995) .................................. 5

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp.*, LLC, 571 F.3d 206, 213-14
 (2d Cir. 2009) ..................................................................................................... 15

## **Statutes**

N.Y. Labor Law §200 ......................................................................................... 1, 7

N.Y. Labor Law §240(1) ................................................................................. 1, 3, 4, 6, 7

N.Y. Labor Law §241(6) ............................................................................... 1, 3, 5, 6, 7, 8

**Rules**

Fed. R. Civ. P. Rule 26(a)(2) ……………………………………...…………… 9, 12, 18

Fed. R. Evi. Rule 401 …..………………………………………...……………..… 3

Fed. R. Evi. Rule 402 …..………………………………………...…………..…… 3

Fed. R. Evi. Rule 403 …..…………………………………………...…………..… 3, 7

Fed. R. Evi. Rule 701 …..……………………………….…………………………..… 9, 10

Fed. R. Evi. Rule 702…..…………….…………………………………… 10, 11, 12, 14, 15, 16, 20

**New York State Industrial Code**

23-1.21(b)(5)(ii) ………………………………………………………….…… 6

**Regulations**

OSHA ……………………………………………………………………..… 2-7

NYC DOB ……………………………………………………….……………..… 2-9

## PRELIMINARY STATEMENT

Plaintiff, Roman De Gabriel Rivera, submits this Memorandum of Law, together with the accompanying Declaration of Holly Ostrov Ronai, Esq., dated December 21, 2023, and the exhibits thereto, in support of his within motion.

This is an action for personal injuries sustained by Mr. Roman De Gabriel Rivera, who on June 30, 2021, was descending a temporarily affixed *job-made* wooden ladder that connected the second floor to the first/ground floor. The ladder, made onsite, was constructed improperly with narrow, unevenly spaced rungs - and with no guard/hand rails attached.  While descending, Mr. Rivera slipped on dirt/sand and fell over the side of the ladder, and then continued to fall through an adjacent uncovered opening all the way down to the concrete basement floor below.  This was testified to by plaintiff and confirmed by two eyewitnesses.[1] Immediately after the fall, numerous other co-workers observed Mr. Rivera lying on the basement floor.

In total, it is uncontroverted that Mr. Rivera fell approximately 25 feet and landed on concrete.  Mr. Rivera suffered a burst fracture of his spine and was rendered a paraplegic - paralyzed from the chest down – and he also sustained a subarachnoid hemorrhage and a subdural hematoma, resulting in a permanent traumatic brain injury.

It is clear that the manner in which the subject ladder was constructed and placed - next to a large, uncovered opening - as well as the uncovered opening itself, violated sections 240(1), 241(6) and 200 of New York Labor Law, in that they failed to provide Mr. Rivera with adequate protection from a substantial fall risk.  Under New York Labor Law all defendants herein, as owners and a general contractor, are liable for those violations.

---

[1] One eyewitness saw him falling over the side of the ladder into the uncovered opening, and the other eyewitness saw him falling into the uncovered opening.

As will be discussed below, several of defendants' witnesses testified that the subject ladder, adjacent uncovered opening, as well as the proximity of the two, did not violate any Occupational Safety and Health Administration (OSHA) standards or New York City Department of Building Codes (NYC DOB). Defendants' expert engineer, Preston Quick, P.E., incredibly opined in his report that because the subject ladder and adjacent uncovered opening did not violate these regulations, there were no violations of New York Labor Law.

However, alleged compliance with OSHA and/or NYC DOB regulations is completely irrelevant to whether New York Labor Law was violated. Thus, permitting Mr. Quick, or any defense witnesses to testify regarding purported compliance with these regulations, will serve only to confuse rather than assist the jury[2], and be far more prejudicial than probative. As such, under the Federal Rules of Evidence, defendants' expert engineer Mr. Quick, as well as any of defendants' lay witnesses, should all be precluded from testifying at trial as to any other codes or regulations, including any NYC DOB codes or OSHA standards. Further, defendants, generally should be precluded from arguing at trial that alleged compliance with OSHA and/or NYC DOB, is evidence that Labor Law was not violated herein – as same is palpably incorrect.

Additionally, defendants' bio-mechanical expert, Angela Levitan, Ph.D. should be precluded from testifying at trial. Angela Levitan's February 17, 2023, report is silent as to the nature and amount of force generated by the fall, and the effect of that force upon Mr. Rivera's body – which is the only thing that a bio-mechanical expert may testify to. Also, in her report, Angela Levitan ignores the overwhelming and uncontroverted evidence in the record - including that of eyewitnesses - as to how Mr. Rivera actually fell, and instead advances multiple bizarrely speculative, unsupported theories relating to the fall. Further, despite opining that the fall could

---

[2] As this Court is aware, New York Labor Law can already be confusing to a jury – adding into that, irrelevant codes, etc. - would serve no valid purpose, other than to further confuse the issues.

not have happened in the manner in which all of the evidence confirms, Angela Levitan never

offers a biomechanical analysis as to any alternative cause for the fall.

## ARGUMENT

## POINT I

**DEFENDANTS' EXPERT ENGINEER PRESTON QUICK, P.E.,
SHOULD BE PRECLUDED FROM REFERENCING AT TRIAL THE
NEW YORK CITY DEPARTMENT OF BUILDINGS CODE OR OCCUPATIONAL
SAFETY AND HEALTH ADMINISTRATION (OSHA) STANDARDS
AND ALSO, BE PRECLUDED FROM TESTIFYING
AS TO ANY LEGAL CONCLUSIONS;
DEFENDANTS AND THEIR LAY WITNESSES SHOULD SIMILARLY BE
PRECLUDED FROM MAKING ANY ARGUMENTS AND/OR STATEMENTS AT
TRIAL REGARDING OSHA OR NYC DOB STANDARDS**

Evidence must be relevant to be admissible at trial. Fed. R. Evid. 402. Evidence is relevant

if it "has any tendency to make a fact more or less probable that it would be without the evidence."

Fed. R. Evid. 401. However, the court may even exclude relevant evidence if its probative value

is substantially outweighed by a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence. Fed. R. Evid. 403.

For purposes of this case, OSHA and NYC DOB have no relevance whatsoever to the

defendants' liability under both sections 240(1) and 241(6) of New York Labor Law.

New York Labor Law §240(1) is "a self-executing statute which, contain[s] its own specific

safety measures," that must be implemented "without regard to external considerations such as

rules and regulations, contracts or custom and usage." *Ross v Curtis-Palmer Hydro-Elec. Co*., 81

N.Y.2d 494, 503 (1993); *Long v. Forest-Fehlhaber*, 55 N.Y.2d 154, 160 (1982); see also *O'Brien

v Port Auth*., 29 N.Y.3d 27, 34 (2017).

Thus, to establish a prima facie violation under Labor Law section 240(1), a plaintiff need only demonstrate that defendants breached their *nondelegable* duty to furnish or erect, or cause to be furnished or erected, safety devices - in a manner that gave him proper protection from gravity-related risks, without regard to OSHA, Department of Buildings, or any other outside rules or regulations. [See *Felker v. Corning Inc*., 90 N.Y.2d 219, 224 (1997); *Alonzo v. Safe Harbors*, 104 A.D.3d 446, 449 (1st Dept. 2013); *Jones v. 414 Equities LLC*, 57 A.D.3d 65, 69 (1st Dept. 2008)]. In fact, the only inquiry under Labor Law section 240(1) is "whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential." *Runner v. New York Stock Exch., Inc*., 13 N.Y.3d 599, 603 (2009)

As such, the law is clear that alleged compliance with OSHA or other rules, regulations, or standards, is entirely irrelevant for the purpose of analyzing a defendant's liability under New York Labor Law §240(1). See *DaSilva v. Toll First Ave LLC*, 199 A.D.3d 511, 512 (1st Dept. 2021) ("Toll's claimed compliance with OSHA regulations requiring fall protection only for falls of six feet or more is irrelevant."); *Hoyos v. NY-1095 Ave of the Americas*, 156 A.D.3d 491, 495-496 (1st Dept. 2017) ("owner's asserted compliance with OSHA requirements applicable to loading docks does not defeat plaintiff's prima facie showing that he was injured when he fell from an elevated dock used by him to gain access to the work site and floors above."); and *Cruz v Cablevision*, 120 A.D.3d 744, 746 (2nd Dept. 2014) ("The affidavit of the defendants' expert in construction safety, in which he opined that the perimeter warning system complied with the Occupational Safety and Health Act (29 USC § 651 *et seq.*), and other recognized industry practices, was insufficient to raise a triable issue of fact as to whether the defendants violated Labor Law § 240 (1).")

Similarly, OSHA and/or NYC DOB regulations are irrelevant for purposes of liability under New York Labor Law §241(6). See, *Alberto v. Disano Demolition Co*., 194 A.D.3d 607 (1st Dept. 2021); *Vernieri v. Empire Realty Co*., 219 A.D.2d 593 (2nd Dept. 1995); *McGrath v. Lake Tree Vil Assoc*., 216 A.D.2d 877 (4th Dept. 1995) Rather, the only relevant regulation for compliance with New York Labor Law §241(6), is the New York Industrial Code.

Since purported compliance with OSHA and/or NYC DOB have <u>no relevance</u> to the issue of defendant's liability under New York Labor Law herein, any testimony or arguments referencing same by defendants and their witnesses, both expert and lay, should not be permitted under the Federal Rules of Evidence. Further, defendants are including in their proposed jury charges that the subject ladder was built "in accordance with all codes", which similarly should not be permitted.

### A. *Defense Expert Engineer Preston Quick, P.E.*

Defendants designated Preston Quick, P.E. as an expert witness on February 17, 2023, and attached a report from Mr. Quick dated February 15, 2023. Thereafter, on March 31, 2023, a rebuttal report from Mr. Quick was exchanged. See Exhibits "A" and "B" to the accompanying Declaration of Holly Ostrov Ronai.

In his February 15, 2023, report, Mr. Quick references deposition testimony from New York City Department of Buildings Inspector Daniel Greer, defense employee Site Safety Manager Ralph DiDonato, defense employee Site Safety Manager Gregory Casabona, all of whom testified to purported compliance with NYC Department of Building Codes and OSHA standards. In addition, Mr. Quick repeatedly states that since safety/hand rails were not required under New York City Department Building Codes or OSHA standards, "The incident ladder was in good repair and safe for its intended use, compliant with applicable codes, rules and regulations." See

p. 13 of Mr. Quick's February 15, 2023, report, Exhibit "A" to the accompanying Declaration of Holly Ostrov Ronai.

Mr. Quick makes a similar statement with regard to the lack of a cover over the adjacent opening: "Covers over ladderway openings were not required by any known applicable code, standard or regulation as safety devices for prevention and/or protection of worker falls from job-made ladders used in construction." *Id*.

For these reasons, Mr. Quick then concludes that "New York State Labor Law § 240(1) was not violated relative to Plaintiff's incident." *Id*. This is repeated in his March 31, 2023, rebuttal report as well.

In his March 31, 2023, report, Mr. Quick also relied upon OSHA standards to counter plaintiff's claim that Section 23-1.21(b)(5)(ii) of the New York Industrial Code was violated. See p. 8 of Mr. Quick's March 31, 2023, report, Exhibit "B" to the accompanying Declaration of Holly Ostrov Ronai.

Since compliance with OSHA and the NYC Building Code is completely irrelevant for liability under sections 240(1) and 241(6) of New York Labor Law, Mr. Quick's testimony must be limited to exclude anything relating to the NYC Department of Building Codes and/or OSHA standards, or any other code for that matter, when offering an opinion for purposes of New York Labor Law §240(1). Regarding New York Labor Law §241(6), since the <u>only</u> regulations relevant to that section are contained within the New York Industrial Code, Mr. Quick's testimony should be limited to exclude any reference to OSHA standards.

Permitting Mr. Quick to testify as to palpably irrelevant codes and standards will obviously confuse the jury by creating a false understanding of the applicable law and be prejudicial to

plaintiff. Accordingly, Mr. Quick's testimony should be limited to exclude any references to OSHA standards and/or the NYC DOB code.

Additionally, as the law in this Circuit is to exclude expert testimony that expresses a legal conclusion, Mr. Quick should be precluded from offering any testimony that sections 240(1), 241(6) or 200 of New York Labor Law, as well as any section of the New York Industrial Code, were not violated herein – as he opines on pages 11-14 of his February 15, 2023, and on pages 6-9 of his March 31, 2023, reports. See *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992); *NA Ex Rel. MA v. New York City Department of Education*, No. 21 Civ. 2643 (PGG) (SLC) (S.D.N.Y. Dec. 12, 2022).

### B. Defendants, and Their Lay Witnesses, Should be Precluded at Trial From Making Any Reference to OSHA Standards and/or NYC DOB Regulations

Several other lay witnesses produced for depositions on behalf of the defendants (including employee Site Safety Manager Ralph DiDonato, and employee Site Safety Manager Gregory Casabona) parroted testimony regarding purported compliance with NYC Building Codes and OSHA standards. Any such testimony or arguments proffered by the defendants should likewise be precluded on the same grounds – that NYC DOB codes and OSHA standards are entirely irrelevant to liability under New York Labor Law. Any such reference would be extremely prejudicial to the plaintiff, and its prejudicial effect would grossly outweigh any alleged probative value – of which there clearly is none. See *Huddleston v. United States*, 485 U.S. 681 (1988); Fed. R. Evid. 403. Such testimony would only serve to confuse the jury, create an artificial and improper burden of proof for the plaintiff and is in direct contradiction to the law that will be charged by the Court to the jury at trial, relating to Labor Law Sections 240(1) and 241(6).

7

As such, pursuant to the Federal Rules of Evidence, defendants should be precluded from introducing all arguments, references and/or introducing testimony from any witness, regarding the NYC Building Code and OSHA standards.

## POINT II

**DEPARTMENT OF BUILDINGS INSPECTOR DANIEL GREER
SHOULD BE PRECLUDED FROM TESTIFYING AT TRIAL
SINCE HE IS NEITHER AN EXPERT WITNESS,
NOR CAN HE PROVIDE RELEVANT TESTIMONY AS A FACT WITNESS;
AND FOR THE SAME REASONS, HIS REPORT SHOULD ALSO BE PRECLUDED**

For similar reasons as set forth above, New York City Department of Buildings Inspector Daniel Greer should be completely precluded from testifying at trial.

Mr. Greer, who testified at a deposition, conducted an inspection of the subject location the day *following Mr. Rivera's fall* - on behalf of the New York City Department of Buildings.  As an Inspector for the New York City Department of Buildings, Daniel Greer was checking only to see if there was compliance with the New York City Building Code.  Mr. Greer testified that he did not see any NYC Building Code "deficiencies" with regard to the ladder *he was shown*. However, Mr. Greer also testified that when he arrived at the site to perform his inspection he was informed that Mr. Rivera had fallen while descending the ladder that led from the first floor to the basement, a ladder which had handrails – and which was not the ladder Mr. Rivera fell from.[3]  He also testified that he was not informed that remedial measures had already been taken as to the actual ladder Mr. Rivera had fallen from, as well as the large opening adjacent thereto.[4]  See pages 7-12, 24-32, 41-56, 67-68, 73-75, 106-112, 115-124, 143 of the deposition of Daniel Greer, Exhibit "C" to the accompanying Declaration of Holly Ostrov Ronai.

[3] Mr. Rivera had fallen from the ladder leading from the second floor to the first floor and then fell through the adjacent opening leading to the basement.
[4] Witnesses testified that in the early morning after the fall, handrails were put on the subject ladder and the adjacent opening was covered by installing plywood on top of the existing guardrails. See DE 180, ¶52

Following his inspection, Mr. Greer issued a handwritten summons[5], and a corresponding computer printout was generated. [See Exhibit "D" to the accompanying Declaration of Holly Ostrov Ronai] The computer printout reads "At the time of the inspection responding to a complaint of worker slipped and fell, inspection reveals it was worker error."  Mr. Greer testified he determined it was "worker error" because he observed "no deficiencies" *in the ladder he had inspected*.   See pages 50-52, 56, of the deposition of Daniel Greer, Exhibit "C" to the accompanying Declaration of Holly Ostrov Ronai.

First, Daniel Greer's testimony regarding NYC DOB violations, or lack thereof – is completely irrelevant herein.  Like Preston Quick, P.E., Mr. Greer's testimony will also be nothing more than an attempt to inject irrelevant issues and evidence into the trial – to create a false burden of proof upon the plaintiff, as well as confuse the jury, with codes and standards that are entirely irrelevant to liability under New York Labor Law.  If permitted, this testimony would be extremely prejudicial to plaintiff.

Further, as Mr. Greer was never identified as an expert witness by the defendants, he cannot testify as one for defendants. Federal Rule 26(a)(2).  Thus, defendants cannot have Mr. Greer provide **any** "opinions" as to what he believed was safe at the site and what was not.

Mr. Greer should not be permitted to testify as a lay witness either. FRE 701 provides that: if a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a)  rationally based on the witness's perception;

(b)  helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

---

[5] Daniel Greer testified the summons was for a violation – lack of guardrails – at an entirely different area at the site than where Mr. Rivera fell.  See pages 42-44, 130-132, of the deposition of Daniel Greer, Exhibit "C" to the accompanying Declaration of Holly Ostrov Ronai.

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702

This rule of evidence is designed to prevent parties from, as here, "proffering an expert in lay witness clothing" by ensuring that opinion testimony passes the strict requirements of FRE 702 which governs "Testimony by Expert Witnesses." See *U.S. v Rigas*, 490 F.3d 208, 224 (2d Cir. 2007); *Lebron v. Sec. of Fl. Dept of Children & Families*, 772 F.3d 1352, 1372 (11th Cir. 2014)

Here, since it is uncontroverted that, unbeknownst to Mr. Greer, he was shown a different ladder at the scene, given wrong information as to what had occurred, and that the actual ladder and adjacent opening had already been modified/remedied by defendants - what he observed that day onsite and whether he did or did not issue violations on behalf of the Department of Buildings certainly would not be helpful for the jury in determining a fact at issue.  FRE 701(b)

Indeed, as Mr. Greer cannot offer any fact testimony that is either relevant or helpful to the jury, nor can he testify as to his "opinions" under the Federal Rules of Evidence, Daniel Greer should be precluded from testifying at trial.

Second, the summons and corresponding computer printout should also be precluded. Again, these documents were generated based upon erroneous information given to Mr. Greer. Thus, that no summons was issued for the subject ladder or adjacent opening [which were already fixed and which, in any event, he was not shown], will not be helpful for the jury in determining a fact at issue.  FRE 701(b).  Rather, it would be extremely prejudicial for the jury to be presented with false "evidence" that after the fall the site was inspected by the New York City Department of Buildings, and no applicable violations were issued.

Similarly, it would be immensely prejudicial for the jury to consider the computer printout which states that Mr. Greer's inspection revealed the cause of the fall was "worker error" – when the reason he made this determination, again, was because of *erroneous information given to him*

10

*by the defendants*. Accordingly, the irrelevant and prejudicial testimony of Mr. Greer, as well as his highly prejudicial summons/computer printout, should be precluded.

## POINT III

**AS THE REPORT/TESTIMONY OF DEFENDANTS' BIO-MECHANICAL ENGINEER, ANGELA LEVITAN IS NOT WITHIN THE PURVIEW OF A BIOMECHANIST, IS ALSO HIGHLY CONCLUSORY AND SPECULATIVE, AND WILL NOT ASSIST THE JURY, SHE SHOULD BE PRECLUDED FROM TESTIFYING PURSUANT TO FRE 702**

Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides: A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

See, Fed. Rule Evid. 702.

As per Rule 702 of the Federal Rules of Evidence, and under *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993) and its progeny, district courts have been tasked with the "special obligation" of serving as "gatekeepers" of expert evidence and must decide which expert witnesses may testify. In *Daubert*, the Supreme Court held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that the expert's testimony both rests on a reliable foundation and is relevant to the task at hand." See also *Nimely v. City of New York*, 414 F.3d 381, 397 (2nd Cir. 2005); *Malletier v. Bourke, Inc.* 526 F.Supp.2d 558, 562 (S.D.N.Y. 2007). The Court explained in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), that the objective of the "gatekeeping" requirement of *Daubert* and Rule 702 is "to make certain that an expert, whether

basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

Here, on or about February 17, 2023, defendants served a Disclosure of Expert Witness Information Pursuant to FRCP 26(a)(2)(B) identifying defense expert witness Angela Levitan, Ph.D., a bio-mechanical engineer.  The disclosure contained her report, dated February 17, 2023. See Exhibit "E" to the accompanying Declaration of Holly Ostrov Ronai.

However, as will be discussed below, Angela Levitan's February 17, 2023, report is <u>fatally</u> deficient in several respects.  As such, her trial testimony will offer absolutely nothing to assist the jury in understanding the evidence or in determining a fact at issue. FRE 702(a)

First, despite purporting to be a *biomechanical* analysis, her report is completely silent as to the nature and amount of force generated by the fall, and the effect of that force upon Mr. Rivera's body.  Second, none of her "conclusions" are grounded upon the clear and overwhelming evidence in the record – in fact, they are contrary to all of the *uncontroverted* evidence in the record.  As such, they are nothing more than impermissible rank speculation.  Further, though she tries to discredit Mr. Rivera, she asserts no alternative theory for plaintiff's fall that is consistent with the evidence in the record – and which is exculpatory for defendants.  Accordingly, Angela Levitan should be precluded from testifying at trial.

### A.  Angela Levitan's Report Does Not Provide a Bio-Mechanical Analysis of the Fall

The Southern District of New York has held that biomechanical engineers, such as Angela Levitan, may <u>only</u> testify "about the nature and amount of force generated by the accident in question and the observed effect of that force on a human body in comparable accidents." See *Rodriguez v. Athenium House Corp*., No. 11 Civ. 5534 (LTS) (KNF) (S.D.N.Y. March 5, 2013); *Morgan v. Girgis*, No. 07 Civ. 1960 (WCC) (S.D.N.Y. May 16, 2008)

Here, Angela Levitan's report is completely silent as to the nature and forces generated by a 25-foot fall over the side of a ladder, through an uncovered opening, and then impacting the concrete basement floor, or the effect of those forces upon a body. As such, she has completely failed to give a bio-mechanical analysis of Mr. Rivera's fall – *which is the __only__ information she would be permitted to testify to at trial*.

In the "Analysis and Discussion" portion of her report, Angela Levitan only discusses Mr. Rivera's testimony as to the location(s) of his hands and feet as he descended the subject ladder prior to his fall. See pages 10-14 of Angela Levitan's February 17, 2023, report, Exhibit "E" to the accompanying Declaration of Holly Ostrov Ronai.

She then stops short and fails to analyze or even discuss the forces applied to Mr. Rivera's body after he falls over the side of the ladder. She similarly fails to analyze or even discuss the final resting position of his body, and/or his sustained injuries. Rather, she attempts to attack Mr. Rivera's credibility by opining that if his hands/feet were in the exact position that he testified to – he "would have moved in a downward direction toward the ground at the base of the ladder" - rather than over the side of the ladder into the uncovered opening.[6] See p. 13 of Angela Levitan's February 17, 2023, report, Exhibit "E" to the accompanying Declaration of Holly Ostrov Ronai. Critically, however, the two eyewitnesses both testified that they saw him fall from the ladder into the uncovered opening – yet **she does no biomechanical analysis of the actual fall**.

Nonetheless, she takes a giant leap and baldly concludes:

> "from a biomechanical perspective, Mr. Rivera did not fall from the ladder while using it in a normal and proper manner. Based on my review of the materials and my analysis, regardless of whether or not a handrail was present on the subject ladder at the time of the subject incident, Mr. Rivera's

---

[6] Defendants also submit as an exhibit a crude animation, as well as 3 drawings, as demonstrative evidence for Ms. Levitan to show the jury that the plaintiff "would have" fallen straight down, rather than to the side. Not one of those animation/drawings depict Mr. Rivera falling into the opening – which is the uncontroverted testimony in the record.

> described kinematics are not consistent with the laws of physics and the
> principles of biomechanics for a fall into the cellar opening. Therefore, Mr.
> Rivera did not fall through the cellar access opening due to a slippery
> condition on the subject ladder as he described."

See pages 14-15 of Angela Levitan's February 17, 2023, report, Exhibit "E" to the accompanying

Declaration of Holly Ostrov Ronai.

Consequently, she only attacks the reason that Mr. Rivera fell [the slippery condition], but

simply ignores the mechanics of the fall itself. Indeed, Angela Levitan does not even perform the

most basic functions of a bio-mechanical engineer. She never discusses or draws conclusions

based on the forces applied to Mr. Rivera's body that were generated as he fell 25 feet down to the

basement, nor does she compare them to similar accidents. Angela Levitan also never once

discusses Mr. Rivera's final resting spot, his spine and brain injuries *vis a vis* the fall, nor does she

ever provide an alternative mechanism for his fall/resulting injuries that is consistent with the

evidence in the record and which is exculpatory.

As such, her "scientific, technical, or other specialized knowledge" is <u>never employed</u>.

Thus, her testimony will not help the trier of fact to understand the evidence or to determine a fact

in issue. Rather, it will only serve to confuse the jury and prejudice Mr. Rivera. Moreover, she

has not applied principles and methods to the facts of this case. FRE 702(a)

It is submitted that this was purposefully done. Angela Levitan knows how to do a

complete biomechanical analysis.[7] However, had Angela Levitan actually performed a bio-

mechanical analysis herein, she clearly would have been unable to avoid the obvious conclusion –

that the horrific injuries sustained by Mr. Rivera <u>are entirely consistent</u> with his falling over the

---

[7] In *Quintero v. 520 Madison Owners LLC*, 2021 NY Slip Op 31465 (Sup. Ct. N.Y. Cty. Apr. 28, 2021), Angela
Levitan did a *complete biomechanical* analysis, which specifically included the forces upon the body, the
final resting position of the body, and the injuries sustained. See the copy of Angela Levitan's affidavit in
the *Quintero* case, annexed as Exhibit "F" to the accompanying Declaration of Holly Ostrov Ronai.

side of the subject ladder, through the adjacent uncovered opening, and down to the concrete basement floor – regardless of the exact spot his hands and feet were before he fell.  Of course, as an "expert" retained by defendants, she could not reach that conclusion.

As such, instead, Angela Levitan failed to do a complete biomechanical analysis and ignored the overwhelming and uncontroverted evidence in the record - to ultimately speculate that Mr. Rivera was not using the ladder in a proper manner[8], and even more incredibly, speculate that he did not fall through the cellar access opening due to a slippery condition on the subject ladder. Ignoring all the evidence and speculating, in order to merely discredit the plaintiff and eyewitnesses' rendition of the incident, is not the function of a bio-mechanical engineer.

Since Angela Levitan has not acted as a bio-mechanical engineer in this case, she should not testify as one.  Allowing Angela Levitan to testify as an "expert biomechanical engineer", when her report provides no bio-mechanical analysis of the *actual fall and injuries*, will only add significant confusion to this already complex case, as well prejudice to Mr. Rivera.

As Angela Levitan's testimony will not help the jury understand the evidence or the issues – which is the first criteria of Fed. Rule Evid. 702 in determining the admissibility of an expert witness' testimony – this Court, as "gatekeeper" should preclude her from testifying at trial.

### B.  Angela Levitan's Report Is Unreliable and Contains Only Speculation

The law is clear that a "trial judge should exclude expert testimony if it is speculative or conjectural." See *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786. See also *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp*., LLC, 571 F.3d 206, 213-14 (2d Cir. 2009) (quoting *Boucher v. U.S. Suzuki Motor Corp*., 73 F.3d 18, 21 (2d Cir. 1996)); *In re Air Disaster at Lockerbie Scotland,* 37 F.3d 804, 824 (2d Cir.1994), cert. denied.

---

[8] Which is unsupported by any evidence in the record.

In conducting this analysis, where the expert's testimony is "connected to existing data only by the ipse dixit of the expert, [a] court may conclude that there is simply too great an analytical gap between the data and the opinion offered. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997), 522 U.S. at 146, 118 S.Ct. 512; *Turpin v. Merrell Dow Pharmaceuticals, Inc.*, 959 F.2d 1349, 1360, cert denied, 506 U.S. 826 (1992). Thus, when an expert's opinion is "simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony." See *Heller*, 167 F.3d at 155.

Further, the Court must determine "whether the proffered testimony has a sufficiently `reliable foundation' to permit it to be considered." *Cambell v Metropolitan Property and Cas. Ins.*, 239 F.3d 179, 184-185 (2d Cir. 2001) quoting *Daubert*, 509 U.S. at 597, 113 S.Ct. 2786). In this inquiry, the Court must consider (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony "is the product of reliable principles and methods"; and (3) that "the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

Here, throughout her report, Angela Levitan completely ignores the <u>uncontroverted</u> evidence that Mr. Rivera fell over the side of the ladder - which had no guard/hand rails - then through an adjacent uncovered opening and down to the concrete basement floor.  Mr. Rivera testified to this, and his testimony was <u>confirmed by an eyewitness</u>.  Numerous other workers testified that they immediately ran over after the fall and observed Mr. Rivera crumpled up on the basement floor.  Notably, <u>not one witness testified that anything else occurred</u>.  Instead, Angela Levitan draws her own conclusions as to certain events, none of which are based upon testimony or evidence in the record.  As such, her entire February 17, 2023, report is improperly riddled with pure speculation and bald conclusory statements.

For example, in her report, Angela Levitan speculates, without any evidence in the record to support it, that "Mr. Rivera did not fall through the cellar access opening due to a slippery condition on the subject ladder as he described", and that "…the cause of Mr. Rivera's fall is unknown…" See p. 15 of Angela Levitan's February 17, 2023, report, Exhibit "E" to the accompanying Declaration of Holly Ostrov Ronai.

To the contrary, the cause of Mr. Rivera's fall is known and uncontroverted. He testified that his foot slipped on sand and dirt on the ladder. Many other co-workers testified that given the concrete/rebar work being performed at the site, sand and dirt was commonplace. Thus, Angela Levitan has no basis whatsoever to discredit Mr. Rivera's testimony on this point. Moreover, as stated above, the evidence is uncontroverted that Mr. Rivera did fall off the ladder and through the adjacent "cellar access opening"[9] – and Angela Levitan's attempt to state that dirt and sand was not the cause, *but that she does not know the cause* - is impermissible. Stating such an opinion that is not based upon facts in evidence, but rather, is contrary to the evidence in the record, is the definition of speculation.

Angela Levitan also incredibly distorts the testimony in the record regarding the lack of safety/hand rails on the subject ladder at the time of the fall. Plaintiff and eight other witnesses unequivocally testified there were **no** handrails on the ladder at the time of the fall. Conversely, not one witness testified that there *were* definitely hand or safety rails on the ladder at the time of Mr. Rivera's fall. Despite this, Angela Levitan states in her report: "there is inconsistency within the testimony provided as to the presence or absence of a handrail/safety railing on the subject ladder." See p. 10 of Angela Levitan's February 17, 2023, report, Exhibit "E" to the accompanying Declaration of Holly Ostrov Ronai.

---

[9] As Angela Levitan refers to the adjacent opening.

Most importantly, Angela Levitan then goes on to baselessly conclude that, "Mr. Rivera did not fall from the ladder while using it in a normal and proper manner." See pgs. 14-15 of Angela Levitan's February 17, 2023, report, Exhibit "E" to the accompanying Declaration of Holly Ostrov Ronai. However, there is absolutely <u>no</u> testimony or other evidence in the record that supports this unfounded and specious claim. Tellingly, Angela Levitan does not cite to, or provide <u>any</u> evidence in the record that Mr. Rivera was doing anything improper as he descended the ladder at the time of his fall. Once again, she is simply attempting to discredit Mr. Rivera with pure speculation. Merely stating that his actions were not "normal and proper", without providing specific testimony of a witness who saw plaintiff allegedly misusing the ladder and/or a bio-mechanical analysis regarding same, renders her opinion purely speculative and thus, inadmissible.[10] She is also required under Rule 26(a)(2)(B) to specify how Mr. Rivera was allegedly using the subject ladder in an abnormal and improper manner. She has completely failed to do so, and as such her opinion is nothing more than improper and inadmissible speculation – designed only to nefariously and improperly discredit Mr. Rivera.

Lastly, Angela Levitan speculates that because one witness (Guillermo Sanchez Melgarejo) testified that he heard a noise prior to turning around and seeing Mr. Rivera fall: "If it is assumed that the loud noise was associated with a causative factor of Mr. Rivera's fall, the precipitating event that caused the noise would have occurred above the first floor. Thus, it is possible that Mr. Rivera did not fall from the subject ladder." See p. 15 of Angela Levitan's February 17, 2023, report, Exhibit "E" to the accompanying Declaration of Holly Ostrov Ronai.

By using such statements as "*if it is assumed*" and that "*it is possible*", it is clear that Angela Levitan is speculating as to what the noise was and that it was connected to the fall. At a

---

[10] Compounding this baseless assertion in Angela Levitan's report, defendants are proposing that the jury be charged that Mr. Rivera is the sole proximate cause of his fall for allegedly "mis-using" the ladder.

large construction site such as this one, loud noises are common.  That a witness testified to hearing a noise before seeing Mr. Rivera in the process of falling cannot be used to support an *assumption* or a *possibility*. As an expert witness, Angela Levitan must render an opinion supported by evidence in the record, and not based on guesses or assumptions.  As an alleged "expert" she should not be permitted to nefariously try to poke holes in Mr. Rivera's testimony – by throwing "possibilities" out there - with no factual or evidentiary basis whatsoever.

Similarly, in the case of *Alves Dos Santos v. Empire Mgt. & Constr. LLC*, 2022 NY Slip Op 33199 (Sup. Ct. Kings Cty. Sept. 22, 2022), Angela Levitan submitted an affidavit in support of the defendant's case in which she speculated how the accident could have happened - with no evidence.  The court rejected the affidavit finding same to be speculative, and unsupported by the undisputed testimony as to how the accident actually occurred.  Angela Levitan is attempting to do something similar here.

From finding that Mr. Rivera's hands and feet could not have been where he testified they were right before his fall, Angela Levitan <u>leaps</u> to the conclusions that: he did not slip and fall from the ladder, he was not using the ladder properly when he fell, and he may not have even been on the ladder at all. This, despite all the evidence to the contrary. Accordingly, as in *Alves Dos Santos*, this Court should not allow Angela Levitan to throw her speculative theories, which are completely unsupported by the evidence, against the proverbial wall - hoping something sticks.

As can be seen from the foregoing, as well as a cursory reading of her report, <u>*none*</u> of Angela Levitan's opinions and conclusions are based upon facts and/or evidence in the record. Rather, her opinions and conclusions are directly <u>contradicted</u> by the evidence in the record, including testimony from the plaintiff, at least two eyewitnesses, and multiple other witnesses.

Angela Levitan's theories are baseless, unsupported speculation, and therefore inadmissible ipse dixit - which should not be presented to a jury.

**C. Angela Levitan's Report Gives No Alternate Theory of How the Fall Occurred Consistent with the Evidence in the Record.**

To be admissible, an expert's testimony must at least address obvious alternative causes and provide a reasonable explanation for dismissing specific alternate factors. See the Advisory Committee Notes on Rules - 2000 Amendment, Fed Rule 702; see also *Daniels-Feasel v. Forest Pharmaceuticals, Inc.*, No. 17 CV 4188-LTS-JLC (S.D.N.Y. Sept. 3, 2021); *Durant v. United States*, No. 1:17-CV-0902 (GTS/CFH) (N.D.N.Y. March 17, 2020).

Here, Angela Levitan failed to address any "alternative cause" of Mr. Rivera's fall that is consistent with the evidence in the record, and which is exculpatory for defendants. She offers no explanation or alternative cause, grounded in bio-mechanics, for Mr. Rivera falling off the ladder and into the adjacent uncovered opening, landing on the concrete basement floor – which eyewitnesses saw. Other than attempting to discredit Mr. Rivera by stating her conclusory, baseless theories that his fall "could not have occurred" as he testified because of where his hands and feet allegedly were before he fell, Angela Levitan provided no exculpatory explanation/analysis as to how Mr. Rivera indeed fell off the ladder into the uncovered opening - landing on the concrete basement floor 25 feet below.

Accordingly, if permitted to testify, her testimony will not assist the trier of fact in understanding the evidence, but rather, will have the opposite effect – it will create substantial confusion and prejudice.

Dated: Port Chester, New York
        December 21, 2023

_____
HOLLY OSTROV RONAI